Argued September 14; reversed October 17, 1933

# GRIGSBY *v.* MILLER ET AL.

## (25 P. (2d) 908)

*Henry E. Perkins,* of Klamath Falls (R. C. Groesbeck, of Klamath Falls, on the brief), for appellant.

*J. H. Carnahan,* of Klamath Falls (T. R. Gillenwaters, District Attorney, of Klamath Falls, on the brief), for respondent.

BELT, J. This suit was commenced on January 7, 1932, to foreclose a mortgage for $5,000 executed on June 12, 1930, by Roy G. Miller and Lena Miller, his wife, on lots 10, 11, and 12, in block 45, Lakeview addition to the city of Klamath Falls, Oregon. The land in controversy lies just outside the corporate boundaries of Klamath Falls and is now a part of The Dalles-California highway. A decree of foreclosure was rendered, but the plaintiff mortgagee appeals from that part of the decree which excludes a strip of land ten feet wide and 150 feet long across the west end of the above lots, alleged to have been acquired by Klamath county for state highway purposes.

Pursuant to the request of the state highway commission that Klamath county acquire certain land for state highway purposes, the county court, on April 30, 1931, initiated proceedings by passing a resolution declaring the necessity for taking such land. Thereafter a condemnation action was commenced but, since some of the land was acquired through agreement or purchase, it seems that the action was not prosecuted. At any rate, the proceedings were abandoned so far as the property in question was involved.

On or about June 4, 1931, Klamath county paid to James Barrett $3,200 to cover damages to the lots by reason of taking the ten-foot strip for state highway purposes and the latter thereupon executed a deed

to the county conveying his interests in such strip of land. Barrett acquired title to the lots from the Millers subject to the mortgage of the plaintiff. This payment was made to Barrett without notice to the mortgagee, although the county had at least constructive notice of the mortgage which was duly recorded on the day of its execution. It appears from the agreed statement of facts upon which this case is submitted that the plaintiff mortgagee learned of this transaction on or about November 25, 1931, and on December 18, 1931, filed a written demand with the county court for $2,000, calling attention to the fact that the land was incumbered by his mortgage lien. Upon refusal of the county court to pay the claim, the plaintiff instituted this suit to foreclose the mortgage. Thereupon the county court, on February 18, 1932, passed a resolution declaring the necessity for taking the strip of land for state highway purposes and mailed a certified copy thereof to the plaintiff. In this same resolution a board of viewers was appointed to determine the amount of damages to be awarded plaintiff by reason of his mortgage lien. On April 22, 1932, after considering the claim of plaintiff who appeared in person before it, the board made a report assessing him damages in the sum of $150. The plaintiff filed a protest against the award of damages, asserting that the county court could not, by the resolution method, acquire a right of way for state highway purposes. This protest was overruled by the county court, however, and, on July 14, 1932, the court, by resolution, approved the report of the viewers. A county warrant of $150 was tendered to the plaintiff but he refused to accept the same. Plaintiff did not appeal to the circuit court but was content to rely upon the foreclosure proceedings which he had already instituted.

■ The title of Klamath county to the ten-foot strip of land in possession of the state highway commission—which ever since October, 1932, has been open to travel as a part of The Dalles-California highway—is based upon: (1) The deed from Barrett; and (2) certain proceedings initiated by the resolution passed by the county court on February 18, 1932, culminating in an award of damages to plaintiff, from which he never appealed. It is clear that the mortgagee's interest was not divested by reason of the Barrett deed since the latter purchased the land from the Millers subject to the mortgage. The only legal effect of this deed was to convey the interests of the grantor. Relative to the second alleged basis of title, the question is presented as to whether the interest of the mortgagee was foreclosed by reason of the proceedings above mentioned.

■■ Plaintiff contends that the proceedings instituted by Klamath county to acquire title to the land in question follow the statutory method of acquiring rights of way for county roads but have no validity so far as acquiring rights of way for state highways is concerned. In this connection the plaintiff asserts that the Legislature has designated methods for acquiring land for state highway purposes, separate and distinct from those to be used in securing rights of way for county roads and that in the instant case the county followed the wrong procedure.

The methods of acquiring rights of way for state highways are specifically enumerated in section 44-131, Oregon Code 1930, which so far as material herein provides as follows:

"The rights of way for state highways, and roads improved or constructed under this act, shall be ac-

quired by the counties in which the highways are situated by either donation, purchase, agreement, condemnation, or through the exercise of the power of eminent domain by the county before any contract shall be let. In case of neglect or refusal on the part of the county to so acquire said right of way, the state shall have power, through the 'state highway commission', to acquire said right of way either by donation, purchase, agreement, condemnation, or through the exercise of the power of eminent domain,  *  *  *."

It will thus be seen from the above section that it was the clear statutory duty of Klamath county to acquire this right of way for state highway purposes when requested to do so by the state highway commission.

Mr. Justice RAND, speaking for the court in *Foster v. Lake County,* 132 Or. 374 (284 P. 830), had occasion to construe section 44-131 in a case wherein Lake county had contracted to purchase from Foster certain land to be used as a right of way for state highway. It was urged as a defense in an action for breach of contract that the county had no authority to enter into the contract, but this contention was held to be untenable. The court said:

"Section 4436, Or. L. [now section 44-131, Oregon Code 1930], expressly declares that rights of way for state highways shall be acquired by the counties in which the highway is situated and provides that such rights of way may be acquired by either donation, purchase, agreement, condemnation or through the exercise of the power of eminent domain by the county before any contract shall be ratified."

In this case Klamath county undertook to acquire the interests of the mortgagee through the resolution method. It is not one of the methods specified in the above section of the statute. True, the adoption of the resolution was one of the necessary preliminary

steps to be taken by the county court before it could have instituted a condemnation action (section 44-4208, Oregon Code 1930; *Kerns v. Union County,* 123 Or. 103 (261 P. 76)), but certainly the property interests of the plaintiff could not be acquired merely by the passage of the resolution.

That there are separate and distinct methods for acquiring land by a county for county roads and those for state highways is shown by the clear and explicit language of section 44-1304, Oregon Code 1930, which was a part of the original highway act passed in 1917. This section provides:

''Proceedings for the laying out, opening, establishment, alteration, straightening, locating and relocating of county roads shall be instituted in the following manner, to wit:

1. By petition of freeholders.
2. By resolution of the county court.
3. By grant of owners of necessary rights of way.
4. By condemnation proceedings.

This provision shall not preclude the acquirement of public ways by adverse user.''

The above section has never been amended. It is to be noted therefrom that the resolution method is distinguished from a condemnation proceeding.

■ In addition to the contention that section 44-131, Oregon Code 1930, authorizes the procedure followed by the county, it is claimed that section 44-1323, Oregon Code 1930, is sufficiently broad and comprehensive to authorize the county to acquire by the resolution method rights of way for state highways. This section, prior to its amendment in 1927, was a part of the original highway act, chapter 295, G. L. O. 1917, entitled an act ''To provide for laying out, opening, establishing, constructing, improving, maintaining, altering, repair-

ing, widening, grading, straightening, locating, relocating, legalizing and vacating *county* roads; providing for a board of county road viewers, and defining its powers and duties; providing for roads of public easement, and the manner of laying out and improving the same; and matters necessary or incident thereto" and repealing certain sections. Section 44-1323 has been codified under title XLIV, chapter XIII, entitled "Procedure for establishing county roads", and in part provides as follows:

"The county court of any county at any regular term may, by resolution, declare its intention to locate, establish, alter, widen, straighten, or change the direction of *any road,* * * *."

It is conceded by the defendant county that, prior to the amendments of the above section in 1927, such section did not authorize a county to acquire land for state highway purposes, but it is claimed that by virtue of chapter 155, G. L. O. 1927, entitled "An Act to amend section 4543, Oregon Laws [section 44-1309, Oregon Code 1930], and section 4556, Oregon Laws [section 44-1323, Oregon Code 1930], relating to notice and assessment of damages in location and relocation of roads" the procedure followed in the instant case is authorized. This act was approved by the governor on February 21, 1927. While the title of the act relating to the location and relocation of *roads* is broad enough to include state highways as well as county roads, it is clear from its context that the legislature by the use of the words "any road" intended that the same should be limited to county roads. This conclusion is further warranted by the later amendment to section 4556, Oregon Laws (section 44-1323, Oregon Code 1930), enacted at the same session of the legislature, entitled "An Act to amend section 4556, Oregon Laws

[section 44-1323, Oregon Code 1930], relative to the location and establishment of county roads, and declaring an emergency''. This act was approved by the governor March 3, 1927, and is controlling so far as the amendment of the above section is concerned: *State ex rel. v. Lightner,* 77 Or. 587 (152 P. 232). It is evident that the defendant county followed the procedure provided in the above section and that since such pertains to the location and establishment of county roads it can afford no authorization for acquiring land for state highway purposes. It is idle to review authorities cited for none of them pertains to the precise question under consideration. The decision of the case is governed largely by statute.

■■ Without doubt the county placed itself in a precarious position when it compensated Barrett for damages and failed to take into consideration the interests of the plaintiff mortagee. It is argued that, since plaintiff has merely a mortgage lien, he must look to the mortgagor for redress of his grievance. We can not agree with this conclusion. Plaintiff was entitled to protection against any impairment of his security. His mortgage lien constituted a property right. While the authorities are in conflict, we believe the better reasoned cases hold that a mortgagee is a necessary party in an action to condemn land for public use. See numerous cases cited in exhaustive note 58 A. L. R. 1539 and 20 C. J. 856. In those jurisdictions which hold that a mortgagee is not a necessary party in such an action, relief may be had in equity by impressing the lien upon the award. No condemnation action was brought by the county to acquire the land in question nor was the mortgagee given any opportunity to impress his lien upon the money paid to Barrett since

several months elapsed before he learned of this transaction. We have adverted to the majority rule relative to the necessity of making the mortgagee a party in a condemnation action merely to show that the plaintiff, by virtue of his mortgage, had a property right which the county should have recognized before making the award to Barrett.

■ It is further argued by respondents that, since plaintiff appeared in person and participated in the proceedings instituted by Klamath county, asking the board of viewers to fix his award and failing to appeal after the same was determined by said board, he is estopped from asserting that the county court did not have jurisdiction over him or the subject matter of such proceedings. The appearance of plaintiff no doubt gave the county jurisdiction over his person, but we can not agree that such appearance conferred jurisdiction upon the county to acquire title to this land by a method not authorized by statute. It was an adverse proceeding and it was necessary for the county to follow the statutory procedure. *Latourette v. Clackamas County,* 131 Or. 168 (281 P. 182), involved a proceeding instituted by the county to alter or change the location of a *county road.* It throws no light on the question under consideration.

We conclude that plaintiff has not been divested of his mortgage lien and, since there has been default in payment, he is entitled to a decree of foreclosure upon all of the land included in the mortgage. However, since the ten-foot strip is now a part of a state highway system and the rights of the traveling public are involved, the mortgagee upon foreclosure and sale will not be entitled to possession of such strip of land until after the expiration of a reasonable length of

time from date of mandate, during which the county or the state highway commission may have an opportunity to acquire the interest of the mortgagee by purchase or by condemnation proceedings.

That part of the decree excluding from foreclosure the strip of land taken for highway purposes is reversed and the cause is remanded with directions to enter a decree not inconsistent with this opinion. Plaintiff is entitled to costs and disbursements.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.